IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**WHITNEY BANK, a Mississippi state-chartered bank, formerly known as Hancock Bank, a Mississippi state-chartered bank, as assignee of the Federal Deposit Insurance Corporation as Receiver of Peoples First Community Bank, doing business as Hancock Bank,**

    **Plaintiff**,

v.                                             **CASE NO. 5:14-cv-165-RS-EMT**

**WAYNE E. DAHL a/k/a WAYNE DAHL, and SMUGGLER'S COVE DEVELOPMENT, LLC, a Florida limited liability company,**

    **Defendants.**
_____/

# ORDER

Before me are Defendant's Motion for Summary Judgment on All Counts (Doc. 29) and Plaintiff's Memorandum in Opposition (Doc. 36).

Plaintiff Whitney Bank has sued Plaintiff Wayne Dahl and Defendant Smuggler's Cove Development, LLC—a now defunct corporation owned and operated by Dahl—for repayment after default on a promissory note and for foreclosure on the properties that were mortgaged as security for the notes. After review, I find that there are no disputed material facts and that Whitney Bank is entitled to judgment as a matter of law based on Dahl's default. Whitney Bank's motion for summary judgment is therefore granted.

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

However, Defendant did not file a "separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," as required by N.D. Fla. Loc. R. 56.1(A). Therefore, all material facts set forth in the statement submitted by Plaintiff are deemed to be admitted. *Id.* I will, however, consider the language of Defendant's Memorandum in Opposition (Doc. 36) and Defendant's 3-page affidavit (Doc. 36-1) to the extent that they dispute any facts stated by Whitney Bank.

## II.   BACKGROUND

In 2003, Defendant Wayne Dahl borrowed money on two separate occasions from People's First Community Bank. (Doc. 29 at 2; Doc. 30 at 9-12). Loan 1 and Loan 2 were in the amounts of $142,400 and $325,000, respectively. (*Id.*). The loans were evidenced by two separate promissory notes and secured by mortgages and assignments of rents on Property 1 and Property 2, respectively. (Doc. 29 at 2-4). The loans were subsequently consolidated along with additional indebtness into a single $550,000 note that was eventually assigned to Plaintiff Whitney Bank. (Doc. 29 at 2, 4-7).

Without the bank's knowledge, Dahl had in 2001 conveyed by quitclaim deed his interest in Property 2 to Defendant Smugglers Cove Development LLC—a company which Dahl solely controls, manages, and directs. (Doc. 29 at 4; Doc. 36-1 at 1). Immediately prior to the recording of Mortgage 2, Dahl recorded a

corrective quitclaim deed to correct the description of the land in order to ensure that it properly referred to Property 2. (Doc. 36-1 at 2). This transfer was recorded immediately prior to People First's recording of Mortgage 2. (*Id.*). Mortgage 2, in accordance with the terms of the mortgage and promissory note, listed Dahl, not Smuggler's Cove, as the owner of Property 2. (*Id.*). Throughout the subsequent reconsolidations and reassignments of the loans, Dahl continued to represent that he owned Property 2, and the documents continued to list him as the sole owner. (*Id.* at 5-6).

In March 2014, Dahl defaulted on his repayment obligations. (Doc. 29 at 7).[1] Whitney Bank accelerated the repayment in accordance with the terms of the loans, and he failed to make payments. (*Id.*).

On July 14, 2014, Whitney Bank filed suit against Dahl under federal diversity jurisdiction, seeking reformation of Mortgage 2 (Count 1), foreclosure of both properties (Count 2), foreclosure of Dahl's personal property (Count 3), damages for failure to repay the note (Count 4), assignments of rents from Properties 1 and 2 (Count 5), and an equitable lien on Property 2 (Count 5).

Whitney Bank now moves for summary judgment on counts 1, 2, 3, 4, and 5.[2]

---

[1] Although Dahl admitted that he breached the terms of the note by failing to make payments (Doc. 11 at ¶ 30), he appears to maintain that he expected the loan to be renewed and was not expecting an acceleration of payments. (Doc. 36-1 at 2-3).

### III. <u>DISCUSSION</u>

Whitney Bank claims that, due to Dahl's admitted default, it is entitled to immediate foreclosure and collection on the loans. Dahl responds that foreclosure on Mortgage 2 is improper because it was never intended to be a mortgage under his name, and that foreclosure on both properties is inequitable because he believed that, based on the conduct of the lenders, the loan would be renewed rather than accelerated.

#### a. *Reformation of Mortgage 2*

The mortgage on Property 2 was executed by Dahl in his own name. However, prior to the recording of the mortgage in Dahl's name, Dahl transferred his interest to Smuggler's Cove Development LLC. Therefore, in order for Whitney Bank to foreclose on the property, the mortgage must be equitably reformed to make Smuggler's Cove the mortgagor. Whitney Bank argues that the mortgage should be so reformed, as either a mutual mistake or a unilateral mistake grounded upon Dahl's misrepresentation.

A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. *Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1369 (Fla. 1987). Mutual mistake occurs

---

[2] Although Whitney Bank's motion requests summary judgment on "all counts," (Doc. 29 at 1), its conclusion only requests action on the first five counts.

where, by inadvertence, a written contract is drafted and executed contrary to the intention of the parties, such as when it is shown that the parties agreed on one thing but said something different when they incorporated it into their contract. *Kidd v. Fowler*, 498 So. 2d 969, 970 (Fla. 4th DCA 1986).

Here, it is apparent that Dahl knew when he executed the mortgage on Property 2 (Doc. 30 at 34) that he did not own the property. Smugglers Cove had owned it since 2001, or at least Dahl intended Smugglers Cove to own it but for a possibly inaccurate land description that needed be corrected by the corrective deed.[3] Dahl likewise knew that Smuggler's Cove owned the property when he signed the 2007 mortgage modification (Doc. 30 at 48) and the 2012 mortgage modification (Doc. 30 at 49), both of which referenced the original mortgage.

There was no mutual mistake in this case. Dahl correctly knew that Smugglers Cove owned the property, and the bank incorrectly believed that Dahl owned the property. The contract is not a misrepresentation of the true intention of the parties. Both parties intended the contract to represent Dahl as the owner of the owner of the property, but only Dahl knew that he did not in fact own it.[4]

Instead, the mortgage agreement appears based on a unilateral mistake. Reformation based on unilateral mistake is proper when there is a mistake on the

---

[3] As Dahl admits, "Smuggler's Cove Development, LLC has owned the property since 2001." (Doc. 36 at 2).

[4] Dahl appears to admit this. (*See* Doc. 36 at 3 ("Any misunderstanding regarding the ownership of any of the real estate supposedly securing the notes was solely on the part of the banks.")).

part of one side of the transaction, and inequitable conduct on the part of the other side. *Providence Square*, 507 So. 2d 1366 at fn. 3.

Dahl engaged in inequitable conduct when he specifically warranted that he held "good and marketable title of record to the Property in fee simple," (Doc. 30 at 36), when he in fact did not. Dahl cannot stick his head in the ground as would an ostrich and pretend that his warranties are meaningless and that the mistake arose solely because of "a lack of due diligence on the part of the banks." (Doc. 36 at 3). The fact that Dahl in facts owns and controls the true title holder, Smuggler's Cove Development LLC, is all the more reason to reform the mortgage. Smuggler's Cove was not a bona fide purchaser for value and deserves no protections from the consequences of Dahl's inequitable conduct. Indeed, Smuggler's Cove was administratively dissolved in 2009 and does not appear to even exist. (Doc. 36-1 at 1).

It is therefore apparent from the undisputed facts that Dahl engaged in inequitable conduct by representing that he owned Property 2, when in fact he did not. Summary judgment is therefore granted as to Count 1, and Mortgage 2 will be reformed to join Smuggler's Cove as mortgagor, such that Smuggler's Cove's interest in the property is subject to the mortgage.

### b. *Foreclosure and Collection*

Having established its mortgage interest in both properties, Whitney Bank next argues foreclosure and collection are proper on account of Dahl's default. Dahl responds that once the note reached maturity he assumed that it would be extended again, as it had in the past. (*See* Doc. 36 at 2; Doc. 36-1 at 2-3). Dahl further argues that the mortgages were not mortgages at all, but merely documentation of Dahl's ability to repay the notes. (*Id.*).

Dahl's arguments are baffling. In his answer, (*see* Doc 11 at ¶ 30), Dahl did not deny that he "breached certain terms and conditions of the Note, including without limitation, when he failed to make the required payments due under the Note, including without limitation the final payment due on maturity of the Note on March 24, 2014." (Doc. 1 at ¶ 30). Dahl provides no further explanation or evidence for his otherwise baseless assertion that he expected the loan to be re-extended, and he cites no legal authority for denying the bank's right to foreclosure pursuant to the terms of the loan documents based on equitable principles. Nor does he present any evidence at all to support his claim that the documents clearly labeled as "mortgages" and recorded as mortgages should not be treated as such. Dahl cites no authority for his argument that the six-month delay in recording the mortgages shows that they were not intended to be mortgages.

Furthermore, to the extent that Dahl does argue that foreclosure is inequitable, his argument appears to be precluded by the *D'Oench* doctrine, which bars non-legal arguments against bank-lenders that are not fully grounded in the loan agreements. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 593 (11th Cir. 1995). The loan documents do not appear to provide a right to renewal, and equitable arguments based solely on the bank's conduct are prohibited by the doctrine. Because Dahl spends only one sentence summarily disputing this argument, (*see* Doc. 36 at 2), further analysis on this point is not necessary.

It is therefore apparent as a matter of law that Dahl defaulted on his loan obligations, and Whitney Bank is entitled to pursue appropriate remedies to recover its loan. Summary judgment on Counts 2, 3, 4, and 5 is therefore granted, at least to the extent that Whitney Bank may elect remedies that are not inconsistent.

## IV.  CONCLUSION

Thus there are no disputed facts, and Whitney Bank is entitled to judgment as a matter of law. Dahl engaged in inequitable conduct requiring the equitable reformation of Mortgage 2, and he has not raised any valid reason why he should be excused from the consequences of his admitted default on his loans.

The relief requested in Plaintiff's Motion for Summary Judgment (Doc. 40) is **GRANTED.** Plaintiff shall, not later than March 19, 2015, file a proposed order of final judgment.

**ORDERED** on March 6, 2015.

<u>**/s/ Richard Smoak**</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**